Go ahead. May I proceed, Your Honor? Good morning. Your Honor, this is Yagya Nepal. I represent Petitioner Budalo. Could you lower your microphone slightly? Sure. My name is Yagya Nepal. I represent Petitioner Budalo, Your Honor. And I'm requesting the court to remand this matter to the Immigration Court to preserve the due process rights of the petitioner, and also to reverse the credibility determination by the immigration judge and the agency's Board of Immigration Appeal, Your Honor. First of all, there is two issues in this case. The petitioner's due process rights has been violated because one of the basis of the agency's determination that denied petitioner asylum application was the testimony of the officer, Rosemann, who was the witness for the DHS. She testified before the immigration judge. But her testimony was not recorded, Your Honor. There was some technical issue that was not recorded. And that's why there was an error. And that was a witness for the government, correct? Yes, Your Honor. How was his testimony prejudicial to you, the absence of his testimony? Your Honor, that was one of the. What did you lose by not having that testimony in the record? Because that was one of the basis of denial of relief. But what was it about his testimony that was helpful to you that you no longer had the advantage of? Your Honor, since the old record was not available, petitioner didn't get chance to cross-examine or didn't get chance to confront that witness, Your Honor. He was at the hearing. Yeah, certainly you had an opportunity to cross-examine. I mean, maybe there's no record of what the cross-examination was. But I think what Judge Pius is trying to get at is, if there were a transcript, what would we see? And we would go, oh, OK, now I understand why Mr. Lowe wins. What did we not get? What are we missing, yeah. Obviously, Your Honor, he was in the court. He get chance to cross-examine. But the record was not available, Your Honor. Right, so what would the record show that we don't know about? What's the secret? The secret is the DHS alleges that petitioner committed a fraud in his asylum applications. But a petitioner explained to the judge that he prepared his application by himself. But he was living in a place where all other Nepalese applicants are living in the same building. And then he prepared his application by himself using the same computer that other people also have access on that computer. And also, he prepared his applications. He used to make a draft. And he used to throw that away before we make the final draft so that other people might have access on those things. And they copied from the petitioner. So Mr. Roseman, the witness that you're complaining about, whose testimony we don't have, he was going to somehow add insight onto this? You still haven't answered the question. Your Honor, the DHS alleges that he committed a fraud. And that's what the officer testified to support that claim. I see, all right. But he explained, petitioner clearly explained to the judge that, Your Honor, he didn't commit any fraud. But as he was a victim of the Communist Party of Nepal Maoist, and there were many other applicants who has the same kind of fear, so there might have some coincidence or similarities of the incident that petitioner faced. But petitioner said that he didn't commit any fraud. And the immigration judge denied relief to the respondent. Actually, Your Honor, petitioner's asylum application was initially approved. But that was revoked later on. He was placed on removal proceedings. So let me make sure I understand how this whole thing came about. Your client obtained asylum through the administrative process. Is that correct? Yes, Your Honor. Right. And then later, I guess about a year later, it was determined that his application was Yes, Your Honor. And the agency revoked his asylum, correct? Yes, Your Honor. And then, about a year later, he reapplied. Yes, Your Honor, before the immigration judge, yes. Essentially, with the same application and some additional declarations or whatever. Right. Is that right? Yes, Your Honor, he renewed his application. And then we came out with a decision that said DHS couldn't revoke asylum. Yes. Right? And only an immigration officer could, Department of Justice or an immigration officer, IJ, could terminate asylum. Yes, Your Honor. Yes, yes, Your Honor. OK, so then at this hearing, this is sort of like a combined hearing. Is that right? Where the IJ was determining whether or not termination of asylum was proper? This is one of the claims we are making, Your Honor. And then there was a credibility determination on the existing application? Is that right? Yes, Your Honor. That's right. So we're requesting to reverse the denial and to reinstate the grant of asylum for the petitioner because he didn't commit any fraud. And the agency's proceedings has a defect because there is due process violations. Because? Well, the termination of asylum was that he committed fraud, right? Yes, Your Honor. It's based on incredibility. Whether there was fraud in the application. One of the reasons, yes, Your Honor. There was fraud in the application. I'm sorry. Yes. Is that right? That's what it was determined. Now, what was the evidence that he offered that there was no fraud in the application? Your Honor, he basically explained to the judge that all the scenario, how he prepared his applications, where he was residing at the time he prepared the applications, all these things was believable and logical, Your Honor. So his argument was that his was true, but all the other ones were fraudulent. He said that, Your Honor, other people might have access on his computer, and probably they have copied from him, Your Honor. So he was saying that his was true. Yes, Your Honor. All the other ones were the fraudulent ones. The issue was like there were other three applicants, Your Honor. They had some similar kind of statements. But applicants claimed that he was true. He was true. Right. But the other people might have access in his computer or in his draft because they were living in the same place, Your Honor. Now, the government in this case says, look, there's substantial evidence supporting the finding that there was fraud in the application. That's what the regulation says. There is a showing of fraud in the alien's application. The IJ found that. I understand that your client has an explanation that other people copied his materials. But isn't there substantial evidence to support the finding of the IJ here that there was a showing of fraud in the application? Your Honor, one of the evidence was the Officer Rosemans, who was the DHS witness. Her testimony was one of the basis for that determination. And this is not available for the court to review. But didn't you have opportunity to summarize what the officer said and put that into the record? Your Honor, we did. But that doesn't necessarily include everything, whatever the officer testified. I think going back to Judge Paisa's question, we know there is some bad stuff for your client in what the officer said. What's the good stuff that would make us say, wow, the IJ really got this wrong? Probably, Your Honor, the officer's DHS witness testified that the applicant committed a fraud. And we didn't get enough opportunity to confront that, Your Honor. So basically, we're requesting to remand the matter to again to call the DHS witness and have her testify before the judge and create a full record, Your Honor. This is pretty specific. Okay. You want to save some time for rebuttal? Sure, Your Honor. Your reply. All right. May it please the Court. Matthew Spirok on behalf of the United States. The Court should deny the petition for review in this case because substantial evidence supports the agency's finding that there was fraud in the petitioner's initial asylum application, such that that fraud, such that he was not eligible for asylum at the time that he filed that asylum application. And CIS properly determined that there was fraud in the application and the case was properly brought before an immigration judge. What was the fraud that was in the application? Well, it was nearly identical wording and essentially the same exact series of events between three different asylum applications, including the petitioner's asylum application. I just want to try and make sure I understand the process here. Yes, Your Honor. It's a little confusing for me because I'm not on top of the procedural niceties of all these immigration cases, but it was the agency that terminated his original grant of asylum. Is that correct? That's correct, Your Honor, but as was mentioned earlier, the Court determined that the CIS is not able to terminate and has to go before an IJ. Right. That's what occurred. So here he had an ‑‑ in response to the termination of asylum, he filed a new application. That's correct, Your Honor. And that's what was before the IJ. Is that correct? That's correct. Okay. And then the IJ realizes that, well, there is this prior grant of asylum that couldn't be terminated by DHS. And so now I have to look at it? Is that what happened? That's exactly what happened, Your Honor. The IJ had to essentially do two things. First, had to determine whether or not there was a preponderance of the evidence if DHS met its burden to show that there was fraud in that previous asylum application. And then also to consider the new asylum application or any other basis for relief that the petitioner wanted to look for. Okay. So the first question up for the IJ was whether or not there was fraud in the application. That's correct, Your Honor. Okay. So the Eighth Circuit says that when you interpret the term fraud in the application, you have to ‑‑ it's basically fraud, you know, intentional fraud. You know that it's fraud. You know that the representations are false. That's correct, Your Honor. Was that standard applied here? And should that standard ‑‑ is that the standard that applies to the regulation? Whether or not there needs to be knowing ‑‑ whether it had to be known that there was fraud in the application. And it's our argument that, in fact, you don't need to have ‑‑ it doesn't have to be knowing of the fraud. It just has to be existence of fraud in the asylum application. Well, let me ask you about that because there's a difference between something being false and something being fraudulent, right? That's correct, Your Honor. False could be an honest mistake. Someone could write AUS and think it means Austria when maybe they meant to say Australia in their application. Fraud implies that there was an intent to deceive the reviewer. And so if it says fraud in the application, there has to be some intent to trick somebody, deceive the person reviewing it. Would you agree with that? That's correct, Your Honor. But I would answer that the reason why it's different for the phase of determining whether or not the asylum should be terminated at that phase is because it's just sort of the preservation of the process. If there was fraud that existed in the application, it's sort of an attack on the asylum process. The alien still has the opportunity to go ahead and say, hey, this wasn't knowing. This was something that somebody else submitted on my behalf. And that's what that sort of scenario is set up for, is the scenario where somebody submits documents that were fraudulent, that they didn't know were fraudulent, but the rest of their case is solid and the rest of their case is not fraudulent. But that's at the asylum phase, the phase of determining whether or not there's fraud in the asylum, it's enough to say that it doesn't have to be knowing. And that's the board's – the board has found that. But you're correct. The Eighth Circuit has a case that's determined that that's not. So you would agree, though, for us to rule in your favor in this case, we would have to create a split with the Eighth Circuit? You do not, Your Honor, because for one thing, no matter what standard you applied in this case, it's clear that the Petitioner would have known that there was fraud in his initial asylum application. Well, let me ask you this. That was going to be my next round of questions. Did the I.J. make a finding that he knew that the statements in his application were fraudulent or were not accurate? I think the I.J. essentially did that because the I.J. was based on essentially the same exact application, asylum application, and the immigration judge found that based on what he presented in that declaration, which had the same exact language in other declarations, that it wouldn't have made – first of all, it wouldn't have made sense that he would have known because one of the other declarations was filed before the Petitioner was even done with his declaration. So that would be an indication that he would have known that since his entire asylum claim is based on that declaration, those series of events, that he would have known that there was fraud in that declaration. And the I.J. found other instances of why the Petitioner wasn't credible, both in sort of the defense of whether there's fraud in the application, but also his new application and his presentation of that, including his demeanor. It seems like the I.J. sort of blended the two issues together because if you go through his – the first issue the I.J. talks about is, or addresses in his opinion, is credibility on the first – I guess general credibility. And then that seems to bleed over into everything that he does after that. Well, I think maybe the reason why it does that, Your Honor, is because there's such a clear appearance of fraud in that first application, and that application is exactly what's presented in the second – in the immigration hearing. And that may be why you don't have that clear demarcation between the credibility standard that would apply in the actual proceedings and what was considered in terminating the initial asylum application. But it's clear that it is two different animals, if you will. One is supposed to be, did DHS – was there a preponderance of the evidence to suggest that there was fraud in the asylum application such that the petitioner wouldn't have been eligible for asylum but for the fraud? And I think it's pretty clear in this case, since the fraud was basically his entire – it wasn't – this isn't a situation where you have one witness or somebody supplied a statement or some sort of documentation to the petitioner for the asylum application, and it turns out that one document was fraudulent. And the entire claim is not necessarily fraudulent, but just that one particular document is. That's not the case here because the fraud was in the declaration, and that pretty much is for his entire claim. So there are two different standards, but in this case, the immigration judge was correct in upholding the termination of the asylum and also in finding that the petitioner was not credible. And I would reiterate, the petitioner was not credible not just because of the fraud in the asylum application, but the petitioner also submitted new documents that were not submitted before to bolster his asylum claim before the IJ. And even those documents were found to have similar identical language that called into question the validity of those supporting documents. I'm talking about letters from people back in Nepal that were saying, hey, this is what occurred, but their language sounded the same throughout. And when Mr. Loh was confronted with that, he said, yeah, there is some similarities there and didn't have an adequate explanation for why you had that same language. And in addition, he submitted a document from the hospital or a medical document that was supposed to corroborate one of his claims of being injured by Mao terrorists. But the problem with that medical document is that it stated that he was injured by a road traffic accident by bicycle, which wouldn't have been consistent with what he said. So those documents are also called into question. And the immigration judge also called into question the petitioner's demeanor when he was pressed on some of these issues during his testimony. Let me ask you a question here. Excuse me. On page 15 of the IJ's opinion, he's discussing, I guess, that BSH case, but he talks about turning to the second prong. The court must consider whether a respondent was eligible for asylum at the time of his application despite the existence of the law. What do you understand that second prong to be that the IJ was referring to? I think that second prong is even if there's fraud in the application, you have to determine whether or not that fraud would have made the applicant ineligible for asylum, but for the fraud. I think that's what the second prong is that he's referring to there. So what, he actually then determined that he knew of the fraud? Is that what you think the IJ was trying to get at? I think the IJ was just saying based on what we have here as what's indicated that this is the fraud, it's pretty clear that he wouldn't have been eligible for asylum at the time of the application with that fraud in the application. Well, does it also have to, well, I'm not sure that you answered Judge Gilman's question, or at least clarified. I guess it raises other questions as well. Because isn't it that the, when you, a minute ago when you were answering my questions, you were pointing to the initial application, right? Yes, Your Honor. Now, there's another situation that occurs in these fraud claims, and that is where the IJ makes a finding that the application is frivolous, right? That's correct, Your Honor, and that's not what I'm talking about. That's not here, but there the IJ would have to find that he knew the statements were false. I believe that's correct, Your Honor. Right? And that's with the initial application, correct? I believe so. Such that. I believe that's correct, Your Honor. Right. So why doesn't that same sort of principle apply here? I think the case that applies, I believe it's the PSH case, the board case, what that essentially says is that what you're trying to preserve here is not whether or not the individual's eligible for the, it's an initial determination just whether or not there was fraud in the asylum process. It's to protect that process, and then there can be, you know, a follow-on determination whether or not there was knowing or whatnot. But it's a different standard than the determination of credibility, I guess, is what the board was getting to in PSH. Okay. Anything else because we let you go over? No, Your Honor. I just would conclude and say that the case should be denied because substantial evidence supports the agency's decision. Okay. Thank you very much. You have a minute for rebuttal. Your Honor, petitioner would like to request the court that he didn't commit any fraud. He had no intention to do that. And as he clearly explained before the immigration judge that he was living in a public, like in a place where all other applicants were living, and they might have access on his record. So this court should consider these circumstances, and that's why. And the other thing is the due process issue is there, so we request to remand the case. Okay. Thank you. Thank you, counsel. Thank you, counsel. We appreciate your arguments in this matter. And it's submitted at this time.
judges: Gilman, Paez, Owens